**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THERESA COATES | : | |
| 1827 W. Butler Street | : | |
| Philadelphia, PA 19140 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | No.: |
| v. | : | |
| | : | |
| WAWA, INC. | : | **JURY TRIAL DEMANDED** |
| 260 W. Baltimore Pike | : | |
| Media, PA 19063 | : | |
| | : | |
| Defendant. | : | |
| | : | |

## CIVIL ACTION COMPLAINT

Plaintiff, Theresa Coates, by and through her undersigned counsel, hereby avers as follows:

### I.     INTRODUCTION

1.     Plaintiff has initiated this action to redress violations by Wawa, Inc. ("Defendant") of the Americans with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), the Pennsylvania Human Relations Act ("PHRA" – 43 P.S. §§ 951 *et seq.*), and the Philadelphia Fair Practices Ordinance ("PFPO" – Phila. Code §§ 9-1100 *et seq.*).[1] Plaintiff asserts claims of discrimination, retaliation, and wrongful termination from employment.

### II.     JURISDICTION AND VENUE

2.     This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

---

[1] Plaintiff identifies that she will pursue PHRA/PFPO claims herein for notice purposes only. She omits such claims in the Count Section of this Complaint. Plaintiff will move to amend the instant lawsuit to include PHRA/PFPO claims upon completion of administrative exhaustion (or waiver of exhaustion by Defendant).

3.      This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5.      Plaintiff is proceeding herein under the ADA (among other claims) and has properly exhausted her administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

### III.    PARTIES

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the caption.

8.      Defendant operates as an enterprise of convenience stores and gas stations with more than 1,000 locations and more than 25,000 employees.

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## IV. FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a 63-year-old woman with disabilities.

12. Plaintiff was hired by Defendant effective on or about August 24, 2020; and in total, Plaintiff was employed by Defendant for a little in excess of four (4) years.

13. Plaintiff was employed as a Customer Service Associate (primarily performing cashier-related duties).

14. Plaintiff physically worked at Defendant's 3300 Market Street, Philadelphia, PA 19104 location (a/k/a Store # 8141).

15. Plaintiff suffers from several disabilities, including osteoarthritis, permanent right-knee complications, and bone and cartilage problems in her right knee / leg.

16. As a result, Plaintiff's disabilities cause her to have permanent severe pain and limit her ability to walk for extended periods of time.

17. For years, Plaintiff was permitted by Defendant to have a chair to periodically take breaks while working as a cashier within Defendant.

18. With this accommodation (as needed), Plaintiff performed her role exceptionally well.

19. Plaintiff had always provided any medical documents requested of her in this regard over her long tenure

20.     In or around September to October 2024, a new General Manager Patrick Dwyer ("Dwyer") began overseeing Plaintiff's store.

21.     Dwyer had a problem with Plaintiff using any accommodation (or chair), no matter how infrequent, for her disabilities.

22.     Plaintiff believes that Dwyer did not like the optics of a chair in general.

23.     Plaintiff's contact within Defendant's human resources department was Kat (last name unknown) ("Kat").

24.     On or about November 6, 2024, Kat called Plaintiff and told her that Defendant was no longer willing to accommodate her and that no chair would be made available for her.

25.     Plaintiff asked Kat why her doctor's note was not sufficient to continue her accommodation.

26.     Kat responded and told Plaintiff to get a new doctor's note.

27.     Plaintiff did not understand why Kat was asking her to get a new doctor's note because Kat had just told her that Defendant would not accommodate her disability anymore.

28.     Plaintiff asked Kat why she needed to get another doctor's note and Kat did not answer this question.

29.     Instead, Kat rudely asked Plaintiff if her knee was ever going to get better.

30.     Plaintiff told Kat that it was up to God if her knee would improve.

31.     On or about November 11, 2024, Kat called Plaintiff again and asked if she had gotten another doctor's note.

32.     Plaintiff told Kat that her doctor was not open on that day because it was Veteran's Day and again asked Kat why she needed another doctor's note since Kat had previously told her that Defendant would no longer accommodate her disability.

33.     Kat said to Plaintiff that it was too late now for her to get another doctor's note.

34.     Kat told Plaintiff that she either had to take FMLA leave or separate from Defendant.

35.     Plaintiff did not want to take FMLA and so she understood that her only choice was for Defendant to end her employment.

36.     Plaintiff told Kat that she did not need medical leave, she could perform her job, and she was concerned that FMLA leave was not paid.

37.     Plaintiff complained to Kat that all that she needed was the same medical accommodation she had had within Defendant for years.

38.     Kat then informed Plaintiff that, since she was refusing to take FMLA leave, she was being terminated effective immediately.

39.     Kat then asked Plaintiff to put Dwyer on the phone.

40.     Plaintiff went to find Dwyer and told him that Kat wanted to speak to him on the phone.

41.     Plaintiff asked Dwyer if he needed to speak to her because she was being terminated.

42.     Dwyer told Plaintiff "Miss T, I'm so sorry" and "no bye," indicating that Plaintiff had to leave Defendant's store, which she did.

43.     Plaintiff came back to the store briefly and asked Dwyer why she got terminated.

44.     Dwyer responded "you have to ask her" (referring to Kat) and did not give Plaintiff any reason for her termination.

45.     Later that day, Plaintiff called Kat and asked her why she was terminated and asked Kat if it was because of her health issues.

46.    Kat responded "yes, it's because Pat could not utilize you in other areas of the store" and "you could fall and hurt yourself."

47.    Kat's statement was patently false as Plaintiff was able to perform her job quite well despite Kat's insistence that Plaintiff was unable to do so.

48.    In her communication(s) with Kat, Plaintiff: (a) offered to obtain any medical documentation necessary to verify her health or accommodation needs; and, (b) complained that she felt her termination was "discrimination."

49.    Kat insisted that Plaintiff was terminated regardless of her refusal to go on FMLA leave (which Plaintiff did not need) and no documentation would change Defendant's position on her termination (according to Kat).

50.    Within one (1) to two (2) days after trying to pressure Plaintiff to take FMLA leave unnecessarily and then expressly "terminating" her, Kat contacted her again via phone.

51.    Kat informed Plaintiff that, even though she was not allowed to return to work, Kat would try to "help" Plaintiff by instead getting her on short-term disability so Plaintiff could be paid some money before her termination went into effect.

52.    Plaintiff then needed to submit a letter to Pennsylvania's Department of Human Services stating the reason for her termination.

53.    On or about November 26, 2024, Plaintiff took a DHS Employment Termination Form (hereafter, the "Termination Form") to Dwyer for him to fill out and sign. *See* Employment Termination Form, signed by Patrick Dwyer on November 26, 2024, attached as Exhibit A.

54.    Dwyer wrote on the Termination Form that Plaintiff's employment ended on November 11, 2024. *Id.*

55.    As for the reason for Plaintiff's termination, Dwyer wrote "unable to accomodate [sic] medical needs, unsafe to continue working." *Id.*

56.    Dwyer signed and dated the Termination Form, despite that it was clearly false that Defendant was unable to accommodate Plaintiff's disabilities and that it was unsafe for her to keep working.

57.    Plaintiff received some short-term disability income in or around December of 2024.

58.    But thereafter, Plaintiff was not compensated.

59.    On or about February 6, 2025, frustrated with her termination and how everything was handled, Plaintiff contacted Kat again via phone.

60.    Plaintiff asked Kat if she would reconsider her termination.

61.    Plaintiff explained that she had no income and offered to keep working if she could just have a chair as needed.

62.    Plaintiff said that she did not understand why her accommodation was a problem all of a sudden.

63.    Kat rudely told Plaintiff "we have already been through this" and that she did not know why Plaintiff was calling about the same issue.

64.    Kat further told Plaintiff that she could not come back and her termination would be deemed effective in Defendant's system after the conclusion of her short-term disability leave (which Plaintiff did not need or want).

65.    On or about April 3, 2025, Defendant submitted a Position Statement to the EEOC in response to Plaintiff's Charge of Discrimination.  *See* Defendant's EEOC Position Statement, dated April 3, 2025, attached as Exhibit B.

66.    Defendant wrote in its Position Statement that Plaintiff "has been on leave since November 11, 2024." *Id.*, at p. 3 n.2.

67.    Defendant's Position Statement **directly contradicts** what Dwyer wrote on the Termination Form that Plaintiff had been terminated on November 11, 2024 because Defendant would not accommodate her disabilities and it was unsafe for her to continue working.

68.    Plaintiff's termination was absolutely discriminatory and retaliatory, as *inter alia*: (1) she was able to perform the essential functions of her job with an accommodation that Defendant had given her in the past but then refused to provide; (2) she was terminated on or about the same time that she was requesting a reasonable accommodation for her disabilities; (3) she experienced significant hostility and antagonism in response to her requests to extend her accommodation for her disabilities; (4) Dwyer stated in Plaintiff's Employment Termination Form that she was terminated because Defendant was "unable to accomodate [sic] medical needs" and it was "unsafe to continue working;" and, (5) Defendant falsely stated in its EEOC Position Statement that Plaintiff "has been on leave since November 11, 2024," **which contradicts Dwyer's assertion in Plaintiff's Employment Termination Form that Plaintiff was terminated on November 11, 2024**. *See* Exhibit A; *see also* Exhibit B, at p. 3 n.2.

### COUNT I
### Violations of the ADA
### ([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate)

69.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

70.    Plaintiff suffers from qualifying health conditions under the ADA, which affected her ability (at times) to perform some daily life activities (set forth *supra*).

71.     Despite Plaintiff's aforementioned health conditions and limitations, she was still qualified and able to perform the essential duties of her job well with Defendant.

72.     Prior to her pretextual termination, Plaintiff disclosed her aforementioned disabilities/serious medical conditions and need for accommodations to Defendant's management and was subjected to animosity and antagonism regarding the same, such that she was subjected to a discriminatory and retaliatory hostile work environment.

73.     Defendant failed to engage in any meaningful interactive process, refused to grant Plaintiff's requests for reasonable accommodations, and terminated her in order to avoid having to accommodate her.

74.     Plaintiff therefore avers that her actual/perceived disabilities or record of impairment were a motivating/determinative factor in the termination of her employment with Defendant.

75.     Plaintiff also avers that she was terminated in retaliation for engaging in protected activity (requesting accommodations) under the ADA.

76.     Finally, Plaintiff avers that she was terminated as a direct result of Defendant's refusal to engage in the interactive process and/or accommodate her.

77.     Defendant's actions as aforesaid constitute violations of the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for

Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, and benefits;

C.       Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendant's actions;

D.       Plaintiff is to be awarded liquidated and/or punitive damages;

E.       Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

F.       Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees as provided by applicable federal and state law; and

G.       Plaintiff is to receive a jury trial as requested in the caption of this lawsuit.


Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**


By:    Ari R. Karpf, Esq. (91538)
       Eight Neshaminy Interplex
       Suite 210
       Feasterville-Trevose,  PA 19053
       (215) 639-0801
       akarpf@karpf-law.com

Date: October 30, 2025

# Exhibit A



| CAO NAME AND ADDRESS | | CASE IDENTIFICATION | | | |
|---|---|---|---|---|---|
| DEPARTMENT OF HUMAN SERVICES<br>PHILA CAO<br>301 E CHELTEN AVE<br>PHILADELPHIA, PA 19144-5781<br>215-560-5200 | | CO<br>51 | RECORD NUMBER ███ | CAT | CSLD<br>5043 | DIST<br>9 |
| | | RECORD NAME<br>Theresa Coates | | | DATE<br>11/19/2024 |



## Employment Termination Form

| TO:<br>Theresa Coates | SSN: |
|---|---|

You have notified this office that you are no longer employed. Please have your employer complete this form and return it to the office no later than : 12/01/2024

A self-addressed return envelope is enclosed or you can fax this form to: 215-560-5251

| EMPLOYER'S NAME:<br>Wawa | EMPLOYER'S TELEPHONE NUMBER: |
|---|---|
| EMPLOYER'S ADDRESS: 3300 Market Street, Philadelphia, PA, 19104 | |
| DATE EMPLOYMENT ENDED:<br>11/11/24 | DATE OF FINAL PAY AND GROSS AMOUNT:<br>11/21/24    $334.77 |
| MEDICAL COVERAGE (CHECK ONE):<br>☐ Yes   ☐ No | IF YES, DATE ENDED: |
| IS EMPLOYEE ELIGIBLE FOR COBRA BENEFITS?<br>☐ Yes   ☒ No | IF YES, NAME OF INSURANCE CARRIER: |
| GROUP/CONTRACT POLICY #: | DATE COVERAGE BEGAN: |

| What was the reason for the employee's termination?<br>unable to accomodate medical needs, unsafe to continue working. |
|---|

| Patrick Dwyer<br>EMPLOYER SIGNATURE | 11/26/24<br>DATE |
|---|---|
| General Manager<br>TITLE | ███<br>TELEPHONE # |



PA 1898 9/18

# Exhibit B



Direct dial: (484) 840-2916
Facsimile: (610) 358-8852
E-mail: vik.jaitly@wawa.com

April 3, 2025

**_VIA ELECTRONIC FILING_**

Federal Investigator
Equal Employment Opportunity Commission
Philadelphia District Office
801 Market Street
Suite 1000
Philadelphia, PA 19107

    **Re:**  **Theresa Coates v. Wawa, Inc.**
       **EEOC Charge No.: 530-2025-03443**

Dear Sir or Madam:

   I write on behalf of Respondent, Wawa, Inc. ("Wawa" or "Respondent"), to respond to the allegations contained in the charge filed by Theresa Coates ("Ms. Coates" or "charging party"), alleging disability and age discrimination and retaliation.[1]

   As described in greater detail below, Wawa engaged in the interactive process with Ms. Coates and approved an accommodation that allowed her to use a stool to ensure that she could perform her duties. This accommodation was intended to be temporary, pending further evaluation of Ms. Coates' medical condition. Upon further review of her medical conditions, it was determined by her medical providers that she would require a stool and require sedentary work on a permanent basis, something that Wawa could not accommodate because of her position at the store. The role in question involves essential functions that cannot be adequately performed

---

[1] Wawa submits this position statement without waiver of its right to assert additional defenses not asserted herein in this or any other future proceedings.



through sedentary work alone. At no time did Wawa deny Ms. Coates access to reasonable accommodations or create a discriminatory work environment.

For these reasons, Wawa requests that the Commission dismiss the charge and enter a finding of no probable cause.

## I. THE FACTS PROVE THAT CHARGING PARTY WAS NEVER SUBJECT TO ANY DISCRIMINATION OR RETALIATION.

### A. Background: Wawa, Inc.

Wawa owns and operates a chain of retail convenience stores throughout the Mid-Atlantic region and Florida, most of which operate on a twenty-four hour a day basis. The management structure of Wawa's stores involves a General Manager who oversees operations in each store. In addition to his or her other duties, the General Manager is responsible for hiring, training, coaching and firing customer service associates. Each General Manager in turn reports to an Area Manager who oversees anywhere from twelve to fifteen or more stores. Wawa does not tolerate any sort of discriminatory treatment of its associates as demonstrated in Wawa's Equal Employment Opportunity Policy, which provides in relevant part:

> Wawa is an equal opportunity employer. Wawa maintains a work environment in which all Associates are treated fairly and with respect, and in which discrimination of any kind will not be tolerated.
>
> In accordance with federal, state, and local laws, Wawa recruits, hires, promotes and evaluates all applicants and Associates without regard to race, color, religion, sex, age, national origin, ancestry, family status, marital status, affectional or sexual orientation or preference, gender identity or expression, citizenship status, disability, veteran or military status, genetic information or any other characteristic protected by applicable law.
>
> Unlawful discrimination will not be a factor in any employment decision, including, but not limited to, decisions regarding recruitment, hiring, compensation, training and apprenticeship, promotion, upgrading,



> demotion, discipline, downgrading, transfer, layoff, termination, or any other term or condition of employment.
>
> Wawa encourages Associates to notify the People Team if a situation arises that the Associate believes conflicts with our policy. Associates who make good faith complaints under this policy will not be subject to retaliation.
>
> Any Associate who is found to have engaged in unlawful discrimination will be subject to disciplinary action, up to and including termination of employment.

See Exhibit A.

Wawa also maintains a Non Retaliation Policy, attached as Exhibit B, that prohibits any form of retaliation if an associate raises a concern to the appropriate personnel about situations they feel are in violation of the law, regulation, policy, procedure or values of Wawa.

Finally, Wawa has an Americans with Disabilities Act Policy that prohibits discrimination against persons with disabilities and requires that Wawa engage in the interactive process and make reasonable accommodations to enable associates with disabilities to perform the essential functions of their jobs. See Exhibit C.

### B.    Charging Party's Employment With Wawa

Ms. Coates was hired as a Customer Service Associate ("CSA") on August 24, 2020 and is still employed by Wawa.[2] CSAs are responsible for making food and beverages to order, ringing the cash register, stocking shelves, and performing general housekeeping tasks all while providing great customer service. See Exhibit D. The General Manager will assign CSAs to different areas within the store based on who is working that day and the strengths and weaknesses of each of the

---

[2] Ms. Coates has been on leave since November 11, 2024.



CSAs.  Ms. Coates worked as a CSA at the Wawa located at 3300 Market Street, Philadelphia, PA 19104 ("Store 8141").  The current General Manager of Store 8141 is Patrick Dwyer.

In or around October 2022, Ms. Coates requested an accommodation to use a stool because she was experiencing right knee pain.  This accommodation was approved on October 11, 2022 and was put in place temporarily until October 4, 2023.  After this date, the stool should have been removed since Ms. Coates' accommodation ended, however, she continued to use the stool.

In November 2024, when it was discovered that she had been continuing to use the stool beyond the approved accommodation, Ms. Coates submitted medical paperwork indicating that she would need to continue to use the stool and that she could only perform sedentary work on a permanent basis.  After engaging in the interactive process with her and reviewing the feasibility of accommodations, it was determined that enabling sedentary work as a modification would significantly hinder the employee's ability to execute critical responsibilities integral to the position.

## II.    CHARGING PARTY'S DISCRIMINATION, AGE AND RETALIATION CLAIMS FAIL.

Ms. Coates's disability, age and retaliation claims fail as a matter of law.  First, Ms. Coates cannot establish that it failed to accommodate Ms. Coates because Wawa engaged in the interactive process and then determined that it could not offer any reasonable accommodation that would allow her to do the essential functions of her job.  The decision not to accommodate sedentary work in this instance reflects the need to maintain operational standards, adhere to role-specific requirements, and ensure fairness in job expectations across all employees. It is not indicative of any lack of commitment to supporting employees with disabilities. Instead, it represents a



measured balance between reasonable accommodation and the essential functions integral to the role.

Second, Ms. Coates claims that she was discriminated because of her age yet provides no evidence to support such a claim aside from stating her age.  She does not claim that she was treated differently because of her age or that younger, similarly situated associates were treated differently.  As such, her age discrimination claim is without merit.

Finally, Ms. Coates claims that she was retaliated for requesting a reasonable accommodation due to her disability.  However, as stated above, Wawa could not provide any reasonable accommodation given her request for sedentary work.

For all of the above reasons, Wawa respectfully requests that the Commission conclude its investigation with a "no probable cause" finding and dismiss Ms. Coates's charge.


Very truly yours,

*Vik Jaitly*


Vik Jaitly
Legal Counsel, Employment & Litigation


VJ

# EXHIBIT A

| | |
|---|---|
| *Title of Policy:* | **Equal Employment Opportunity** |
| *Date Originated:* | **12/14/2010** |
| *Last Revised:* | **10/16/2015** |
| *Department:* | **Legal** |

**Policy:**

It is Wawa's policy to comply with all applicable federal, state, and local equal employment opportunity laws.

**Standards:**

- Wawa, Inc. is an equal opportunity employer. Wawa maintains a work environment in which all Associates are treated fairly and with respect, and in which discrimination of any kind will not be tolerated.
- In accordance with federal, state, and local laws, Wawa recruits, hires, promotes and evaluates all applicants and Associates without regard to race, color, religion, sex, age, national origin, ancestry, familial status, marital status, pregnancy status, affectional or sexual orientation or preference, gender identity or expression, citizenship status, disability, veteran or military status, genetic information or any other characteristic protected by applicable law.
- Discrimination will not be a factor in any employment decision, including, but not limited to, decisions regarding recruitment, hiring, compensation, training and apprenticeship, promotion, upgrading, demotion, discipline, downgrading, transfer, layoff, termination, or any other term or condition of employment.
- Wawa encourages Associates to notify the People Team if a situation arises that the Associate believes conflicts with our policy. Associates who make good faith complaints under this policy will not be subject to retaliation.
- Any Associate who is found to have engaged in discrimination will be subject to disciplinary action, up to and including termination of employment.

# EXHIBIT B

| | |
|---|---|
| *Title of Policy:* | **Non Retaliation** |
| *Origination:* | **04/03/2001** |
| *Last Revised:* | **04/28/2008** |
| *Department:* | **People Team** |

**Policy:**

Wawa is committed to maintaining a culture that promotes the prevention, detection and resolution of instances of conduct that do not conform to law, regulation, policy, procedure or Values of Wawa. Therefore, it is the policy of Wawa that no Associate will suffer retaliation by the Company or any Associate as a consequence of coming forward to report a violation.

**Standards:**

It is vital to the business interests and culture of the Wawa that Associates conduct themselves in accordance with the policies and values of Wawa

1. All Associates shall be allowed to freely discuss and raise questions to managers or to the appropriate personnel about situations they feel are in violation of law, regulation, policy, procedure or Values of Wawa.
2. Wawa recognizes that violation of certain policies and/or values by an Associate will most likely be uncovered by another Associate.
3. No representative of Wawa shall be permitted to engage in retaliation, retribution or any form of harassment (intimidation, threats, coercion or discrimination) directed against an Associate who reports a compliance concern.
4. Coming forward will not immunize any associate from the consequences of his/her misconduct.
5. Wawa will review any allegation of retaliation and will ensure that a thorough investigation is conducted as appropriate.
6. Anyone who is involved in any act of retaliation or retribution against an Associate that has reported suspected misconduct in good faith will be subject to disciplinary action.

# EXHIBIT C

| | |
|---|---|
| *Title of Policy:* | **Americans with Disabilities Act As Amended (ADA)** |
| *Date Originated:* | 08/15/1995 |
| *Last Revised:* | 9/19/2022 |
| *Last Reviewed* | 9/19/2022 |
| *Department:* | Legal |

**Policy:**

It is Wawa's policy to comply with the Americans with Disabilities Act as Amended (ADA).

**Standards:**

The ADA prohibits discrimination against persons with disabilities in hiring, as well as in all terms and conditions of employment. Employment and personnel decisions – those involving recruiting, hiring, training, compensation, benefits, transfers, promotions, demotions, terminations, layoff and recall – shall be administered so as not to discriminate against persons with disabilities.

1. The Company shall engage in the interactive process and make reasonable accommodations, as required by law, for all known disabilities to ensure equal opportunity in the application process and to enable Associates with disabilities to perform the essential functions of their jobs and enjoy the same benefits and privileges of employment that are enjoyed by Associates without disabilities.

2. In order for a person to obtain the protections offered by the ADA, an individual must:
   a. have a physical or mental impairment that substantially limits one or more major life activities
   b. have a record of such impairment
   c. be regarded as having such an impairment.

3. Wawa shall base its selection criteria on job-related reasons and will not eliminate qualified applicants or Associates with disabilities because of their inability to perform non-essential or marginal job functions. As required by the ADA, the Company shall make reasonable accommodations to assist disabled applicants or Associates in meeting these legitimate criteria once it knows of the person's disability, provided that the accommodations do not cause undue hardship to the Company's business.

4. The Company's- policy is not to inquire about mental or physical impairments unless an applicant or Associate voluntarily discloses the existence of a disability and requests an accommodation. Should the subject arise, discussions concerning mental or physical impairments will be strictly for the purpose of discerning the nature of accommodation that may be appropriate and the applicant's or Associate's ability to perform the essential functions of the job.

5. Any Associate or applicant who feels that he or she is being discriminated against because of a disability should report the discriminatory conduct to the Associate Service Center at 800-444-9292, Option #2, Option #6.

# EXHIBIT D

 **Job Description**

**Job Title:** Customer Service Associate
**Department:** Store Operations

**Location:** Various
**FLSA:** Non-Exempt
**Job Last Reviewed:** March 2018

**Job Summary:**  The Customer Service Associate works in support of the store management team to facilitate and perform a variety of tasks including customer service, food and beverage preparation, cash register duties, general housekeeping and other related functions. The Customer Service Associate delivers an exceptional customer experience that supports Wawa's vision to fulfill lives every day.

**Principal Duties:**

- Greet and provide an enjoyable shopping experience for all customers. Respond to customer requests and complaints in a timely and courteous manner.  Utilize the GREAT customer service and customer recovery model to ensure customer engagement.
- Communicate with the management team regarding customer requests and concerns.
- Operate the cash register, scan items, bag merchandise and properly handle different methods of payment.  Maintain proper cash levels in register drawer and change machines.  Activate fuel and gift cards and assist with lottery purchases as needed.
- Comply with federal and state laws by requesting personal identification from customers who are purchasing restricted products such as tobacco and/or alcohol.
- Stock and refill product within the interior and exterior core register area, cold express cases, bakery and grocery aisles.
- Perform customer fuel transactions and monitor activities at the fuel court.  Stop fuel pumps if necessary.
- Prepare all made to order food and/or beverages according to recipe or customer specifications.
- Stock food and beverage areas with products and supplies to ensure in stock conditions at all times.  Ensure coffee thermals are filled and working properly.
- Ensure the proper execution of assigned foodservice and beverage programs and procedures.
- Complete cleanliness tasks to ensure all food and beverage service areas are free of any residue, debris and spills.
- Follow proper coding procedures.  Check expiration codes, face and inspect all items.  Pull expired items, document and discard.
- Adhere to the execution of established safety, security, quality and store operations policies, procedures and practices as outlined in Wawa's policy manual, training materials and other publications.
- Complete all store housekeeping functions (i.e., cleaning, dusting, sweeping, mopping, emptying trash, etc.).
- Ensure safe working conditions by maintaining a clean, organized work area in accordance to standards.
- Complete other tasks as assigned by store management.

*Preceding job description has been designed to indicate the general nature and level of work performed by associates within this classification.  It is not designed to contain or be interpreted as a comprehensive inventory of all duties, responsibilities and qualifications required of associates assigned to this job.*

**Essential Functions:**

- Ability to work well individually as well as in a team environment
- Good communication skills
- Excellent customer service skills
- Ability to learn FSRA process and procedures and demonstrate on a daily basis
- Ability to work overtime as needed
- Ability to multi-task in fast paced environment
- Ability to learn and demonstrate all Wawa Safety and Quality Assurance processes and procedures
- Must be able to perform the following physical behaviors repetitively throughout a shift: standing, walking, handling, reaching horizontally and grasping firmly
- Must be able to perform the following physical behaviors frequently throughout a shift: reaching above the shoulder, reaching below the waist, pushing buttons, bending, stooping, squatting, crouching, kneeling and pushing
- Must be able to lift and carry up to 35 lbs
- Work safely with equipment that can create and hold very high temperatures using appropriate personal protective equipment.
- Must be at least 16 years old
- Must have reliable transportation
- Must wear slip resistant shoes at all times
- Must be able to tolerate exposure to cleaning products

**Basic Qualifications:**

- Pursuit of or high school diploma or equivalent, preferred
- Prior food service and/or customer service experience preferred

*Preceding job description has been designed to indicate the general nature and level of work performed by associates within this classification. It is not designed to contain or be interpreted as a comprehensive inventory of all duties, responsibilities and qualifications required of associates assigned to this job.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Theresa Coates | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Wawa, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.               ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                       ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.      (x )

| | | |
|---|---|---|
| 10/31/2025 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

### DESIGNATION FORM

Place of Accident, Incident, or Transaction: __Defendants place of business__

---

***RELATED CASE IF ANY:***   Case Number:_____   Judge:_____

1. Does this case involve property included in an earlier numbered suit?   Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?   Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?   Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.   Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ is / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

***A. Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

***B. Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____
  _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒   Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐   None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
COATES, THERESA

**DEFENDANTS**
WAWA, INC.

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Delaware
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government
  Plaintiff
- [X] 3   Federal Question
  *(U.S. Government Not a Party)*
- [ ] 2   U.S. Government
  Defendant
- [ ] 4   Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [X] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101)
Brief description of cause:
Violations of the ADA, PHRA and PFPO.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [X] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   10/31/2025

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____